UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| ALLISTER D. GUERRA, | ) | C/A No.: 4:13-2062-MGL-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Report and Recommendation |
| KENNY ATKINSON, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

The *pro se* Petitioner filed a petition for writ of habeas corpus on July 30, 2013, pursuant to 28 U.S.C. § 2241[1]. Respondent filed a Motion to Dismiss or, in the alternative, a Motion for Summary Judgment on January 15, 2014. The undersigned issued an order filed January 16, 2014, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the Motion to Dismiss/Motion for Summary Judgment procedure and the possible consequences if he failed to respond adequately. The court received a letter from the Petitioner on January 27, 2014, stating that he had received the Roseboro Order but had not received the Respondent's dispositive motion. Therefore, a second Roseboro Order was issued on January 30, 2014, along with a copy of Respondent's dispositive motion. (Doc. #30). Petitioner filed a response in opposition on March 3, 2014. (Doc. #35). Petitioner also filed a motion for summary judgment on January 15, 2014.

As matters outside of the pleadings have been presented for consideration, the court will consider the motion under the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure.

---

[1] This habeas corpus case was automatically referred to the undersigned United States magistrate judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 19.02 (B)(2)(c), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

**STANDARD FOR SUMMARY JUDGMENT**

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See* Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986). The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In *Celotex*, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

## FACTS/ARGUMENTS

Petitioner is currently incarcerated at the Federal Correctional Institution "FCI" Edgefield, South Carolina. At the time of the allegations in the complaint, Petitioner was incarcerated at the Reeves County Detention Center in Pecos, Texas. Petitioner has a current projected release date of January 12, 2017, via Good Conduct Time (GCT) Release. Petitioner requests that an incident report #2309715 be expunged from his record and his GCT be reinstated. (Petition, p. 8).

Specifically, Petitioner argues as follows, quoted verbatim, in part:

> Petitioners guilt was formed by the Disciplinary Hearing Officer (DHO) Ms. I. Martinez. Ms. Martinez in finding the petitioner guilty abused her authority, falsified facts and violated BOP policy.
>
> The petitioner was initially charged with an incident code 216(299), (offering a staff member a bribe or anything of value). . . Petitioner was initially accused and issued this incident report on May 29, 2012. The petitioner was seen by the DHO on August 4, 2012 for the incident that occoured (sic) on May 29th. The Petitioner had a staff Represinitive (sic) during the hearing. The petitioner staff repsentive (sic) was Officer LittleJohn.
>
> The petitioner expressed to the DHO, Ms. Martinez that the Unit Disciplinary Commity (UDC) failed to comply with BOP program statement 5270.09, 541.7(A)(4)(C) page 24, Timing. Petitioner stated that the UDC had 5 work days to conduct the DC hearing. The DHO in turn stated that due to the fact that petitioner was housed in the Medical Department for Suicide watch the UDC hearing was delayed. The petitioner stated that this fact was false due to the fact that the petitioner was in fact housed in suicide watch because Dr. Arce issued an order for the petitioner to remain on watch until transferred. These fact(s) were documented within petitioners Medical file. Dr. Arce Recommended a (770) Medical transfer on or about June 12, 2012.
>
> In accordance to BOP program statement 5270.09, states that evidence has to be presented to the DHO and UDC to show that the inmate is not competent to proceed with the UDC hearing. There wasn't never any evidence presented because of the fact that the petitioner was competent the entire time petitioner was housed in the medical section of the facility. The petitioner was granted a phone call on July 6, 2012 per the Wardens order

3

> . . . If the petitioner was in fact incompetent to move forward with UDC proceedings the petitioner would not have been given a phone call.
>
> . . .
>
> The Petitioner was found guilty on August 4th 2012 for violating incident Code (216). On August 12 2012 the petitioner received another incident report outlining the same incident but a different code. This new incident was now a 108(A) and not a 216. The petitioner asked why he was being served this incident report when he was already found guilty of the same act. He was informed that the DHO's boss, Mr. McCarthy that works for the Private Management Branch in D.C. stated that the petitioner was not guilty of violating code 216.
>
> On August 16, 2012, the petitioner was served yet again another version of the incident report with code 108(A). All of the versions of the incident report are the same subject matter and is under the track number 2309715. Within each version their was information taken and added as if an attempt was made to make it as perfect as possible. There were staff member that revealed to the petitioner that the second version the captain wrote, Captain Horgard and that the 3rd version the Assistant Warden Mr. Garanto wrote. This is also a violation of BOP policy 5270.09
>
> The petitioner was found guilty on or about September 15, 2012 with a different staff repesntive (sic) present. Officer Tindale was present during this hearing. During this new DHO hear for the 108 series incident report, the petitioner informed the DHO that her conducting this hearing is in violation of policy 5270.09(f)(6). Stating that she could not have requested a further investigation after I was already found guilty of code 216. The DHO Ms. Martinez stated that the Warden told her that she can and that her Boss Mr. McCarthy stated that she could. She then further stated that the Warden told her that she(sic) had to find me guilty because it will be used as a one way ticket to transfer me out of the facility and that was his main purpose. After this statement the DHO sanctioned the petitioner and subtracted 81 Good conduct days from petitioner, and left petitioner with all his privalages(sic). This in is self is confirmation of the violation of policy dur(sic) to the fact that any person that violates a 100 code normally has Good Conduct time and privalges(sic) taken away.

(Doc. #1-1, pgs. 1-4).

Respondent concedes that this court has jurisdiction over Petitioner's challenge to a disciplinary action wherein GCT was taken as a sanction because such a sanction impacts the

duration of his sentence. Respondent also asserts that he does not contest whether the Petitioner has exhausted his administrative remedies as to the allegations set forth in his petition. However, Respondent asserts Petitioner received all process due in the disciplinary hearing.

Respondent asserts that on May 29, 2013, Petitioner approached Correctional Officer, Robert Porras, while he was posted at the East Compound at 8:40. (Doc. #26, Respondent's Exhibits #3 and #4). Petitioner passed Officer Porras three to four times before stopping at the East Compound. (Id.). Petitioner asked Officer Porras if he could do him a big favor. (Id.). Officer Porras asked him what he needed. (Id.). The Petitioner told Officer Porras he needed to ask him a favor but did not know how he would react to it. (Id.). The Petitioner stated he needed a cell phone to take care of some family business for his family. (Id.). Officer Porras immediately notified the Captain of the incident, wrote a memorandum detailing the incident, and wrote the Petitioner an incident report charging him with violating Code 299 (most like a Code 216). (Id.).

Respondent submitted several exhibits, including but not limited to the following: copy of the corrected incident report (Exhibit #6); notice of the Discipline Hearing before the Discipline Hearing Officer (DHO) that was delivered to Petitioner (Exhibit #7); a copy of the Inmates Rights at Discipline Hearing (Exhibit #8); and copies of the DHO decision and the revised copies (Exhibits #9 and #10). Respondent also submitted the declaration of Irene Martinez, the DHO at the Reeves County Detention Center. (Exhibit #4). According to Martinez's declaration and the DHO report, Petitioner received the original incident report on May 29, 2012, the same day it was written. (Id.). At approximately 9:59 p.m., Petitioner received Incident Report No. 2309715 charging him with the prohibited act of Conduct Which Disrupts or Interferes with the Security or Orderly Running of the Institution or the BOP conduct most like another high severity prohibited act, Giving or Offering

an Official or Staff Member a Bribe or Anything of Value, in violation of 299. (Id.). The incident report provided Petitioner with a description of the incident and the prohibited act with which he was being charged. (Id.).

On June 1, 2012, the incident report was suspended pending a psychological evaluation of the Petitioner. (Id.). On July 11, 2012, a memorandum was signed by Acting Warden Robert Ellis, explaining why there was a delay in referring the matter to the Unit Discipline Committe (UDC). (Id.). The UDC hearing was conducted on July 11, 2012. Because of the serious nature of the charges, the UDC referred the mater to the DHO. (Id.).

Instead of holding a DHO hearing, the DHO sent the incident report back to be re-written and the charge changed to a Code 108A, Introduction of a Hazardous Tool (attempted). (Id.). On August 11, 2012, Officer Porras re-wrote the incident report about the incident that happened on May 29, 2012, charging the Petitioner with a Code 108A, Introduction of a Hazardous Tool (attempting). Petitioner received a copy of the incident report on August 12, 2012.

The DHO sent the incident report back again to be re-written to include more details. On August 16, 2012, Officer Porras re-wrote the incident report to include details, more in line with the memorandum he wrote on May 29, 2012. Petitioner received a copy of the incident report on August 16, 2012. An investigation was conducted by a lieutenant and the matter referred to the UDC. The UDC hearing was conducted on August 22, 2012. The UDC referred the matter to the DHO. On August 22, 2012, the Petitioner was given written notice of a hearing before the DHO and advised of his rights at the DHO hearing. (Id.). The Petitioner requested a staff representative but declined to call any witnesses. (Id.).

A hearing before DHO Martinez was conducted on September 19, 2012. (Id.). Petitioner was

present and advised of his rights. (Id.). Petitioner gave his version of the facts but did not call any witnesses. (Id.). The staff representative that the Petitioner originally requested was not available; however, the Petitioner agreed to a new staff representative, who was present at the DHO hearing. (Id.). After consideration of the evidence presented, DHO Martinez found that Petitioner committed the prohibited act as charged. (Id.). The DHO imposed sanctions including disallowance of 41 days of GCT and 40 days of forfeiture Non-Vested GCT. (Id.). DHO Martinez prepared a written report on September 19, 2012, detailing her decision including why the incident report was rewritten three times, the evidence she relied upon, and the reasons for the sanctions she imposed. (Id.). Martinez noted that the original incident report was written on May 29, 2012, and the Petitioner received a copy of the original incident report on the same day. (Id.). The incident report was suspended on June 1, 2012, pending a psychological evaluation. (Id.). On July 9, 2012, medical staff, Dr. M. Williams, psychologically cleared Petitioner, and the incident report could be processed, the incident report was forwarded to the UDC on July 11, 2012, and subsequently forwarded to me. (Id.). The original incident report was returned for corrections due to the lack of information, and a corrected copy was delivered to the Petitioner on August 12, 2012. DHO Martinez again returned the incident report to the investigator for revision. (Id.). The incident report was revised, and delivered to the Petitioner on August 16, 2012, which was "inadvertently typed as 08/26/12." (Id.). The incident report was then forwarded to the UDC on August 22, 2012, and after the conclusion of the UDC hearing, the incident report was forwarded to Martinez. (Id.). A copy of the written decision was delivered to the Petitioner on October 25, 2012. (Id.). In August 2013, Martinez was contacted by Tami Cassaro, the Supervisory Attorney for the Consolidated Legal Center, regarding the discovery of an erroneous loss of 40 days of Non-Vested GCT, cited in her DHO report dated September 27,

2012. (Id.). On September 9, 2013, Martinez revised the DHO Report, removing the sanction of the loss of 40 days of Non-Vested Good Conduct Time, the Revised DHO Report shows the Petitioner has only been sanctioned to the loss of 41 days of Good Conduct Time. (Id.). A copy of the revised decision was delivered to the Petitioner on September 10, 2013. (Id.). DHO Martinez corrected the Inmate Discipline Data, Chronological Disciplinary record in SENTRY, to reflect the correct sanction of 41 days of GTC for the prohibited act of Introduction of a Hazardous Tool (attempted) in violation of Code 108(A); the 40 days of Non-Vested GTC was removed. (Id.). Martinez notified the DSCC to ensure the Petitioner's Sentence Computation was recalculated to reflect the addition of the 40 days toward his release date. (Id.). The DSCC recalculated the Petitioner's sentence computation on September 25, 2013, restoring the 40 days of Non-Vested GTC, which resulted in his projected release date of January 12, 2017. (Id.).

Petitioner filed a response in opposition to the motion for summary judgment on March 3, 2014. (Doc. #35). Petitioner asserts that for a UDC to be delayed or postponed, evidence has to be presented to show that an inmate cannot understand the nature of the disciplinary proceedings. (Id.). Petitioner asserts that the mental health staff never presented any information to support any claim that the Petitioner was ever incompetent to participate in the disciplinary hearings. (Id.). Next, Petitioner argues that Ms. Martinez held a DHO hearing on August 1, 2012, and found Petitioner guilty and sanctioned the Petitioner so that the DHO cannot request further investigation once guilt is found. (Id.). Petitioner argues that he should not have been submitted for a transfer during the month of August 2012, while he was pending a DHO hearing. (Id.).

Respondent also filed a reply on March 7, 2013. (Doc. #36). Respondent asserts that while the Petitioner contends that in order for his UDC hearing to be postponed or delayed, evidence

would have had to be presented to show he could not understand the nature of the disciplinary proceedings, and such evidence was never presented by a mental health staff member, the UDC hearing was delayed because he was on suicide watch, pending a psychological evaluation. (Id., attachment Doc. #36-1). Respondent attached a memorandum to the UDC dated July 9, 2012, from a licenced professional counselor stating that Petitioner had been seen by a psychiatrist for an evaluation, who found Petitioner no longer showed any signs and symptoms of suicide ideation and was competent to attend a UDC hearing. (Id.). Thereafter, a UDC hearing was conducted on July 12, 2012. (Id.).

Additionally, Respondent asserts that there was not a DHO hearing in which Petitioner was found guilty and sanctioned on August 1, 2012, such that the DHO could not request further investigation as Petitioner claims. (Id.). Respondent asserts that the evidence presented clearly shows that the DHO hearing was held on September 19, 2012, and, at that time, the DHO found that the Petitioner had committed the prohibited act of Possessing a Hazardous Tool in violation of Code 108A, and sanctioned him accordingly. (Id.). Therefore, Respondent argues that the DHO did not err when she sent the incident report back to be re-written twice. (Id.).

Lastly, Respondent asserts that Petitioner's argument that the request for him to be transferred should not have been submitted until all of the DHO proceedings were completed fails. Petitioner fails to cite to any policy that prohibits an inmate from being transferred if he has a pending DHO matter because there is no such policy. (Id.). Further, Respondent states that, as Petitioner admitted in his response, Petitioner went before the DHO prior to his transfer from Reeves County Detention Center. (Id.).

## ANALYSIS

The Supreme Court held that inmates are entitled to limited due process rights in prison disciplinary proceedings to the extent that a protected liberty interest is affected. Inmates have a protected liberty interest in the accumulation of good time credits. See Wolff v. McDonnell, 418 U.S. 539, 564, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Therefore, in prison disciplinary proceedings where a prisoner faces the possible loss of good conduct credits, he is entitled to certain due process protections. Id. These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. Wolff, 418 U.S. at 564-571. Furthermore, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." Superintendent, Mass. Correctional Institute v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

Here, the Petitioner, who was sanctioned, including the loss of GCT, was given advance written notice of the charges more than twenty-four hours before the DHO hearing. Petitioner was offered the opportunity to present evidence in the form of documents or witnesses, and to have the assistance of a staff representative. Petitioner elected to proceed with a representative but declined to call any witnesses. There was a written decision listing the specific evidence relied upon, the findings, the reasons for the revised incident reports, and the sanctions. The report was delivered to Petitioner. In addition, an error was recognized in the deduction of 40 hours non-vested GTC which was corrected and the time was returned to the Petitioner. (Respondents' Exhibit #2, p. 3). Accordingly, Petitioner received all the due process required by Wolf in his disciplinary

proceeding.[2]

In this case, Petitioner has neither asserted nor shown that he was prejudiced by any delay, and he has not shown a violation of due process under Wolff, supra. Accordingly, Petitioner's claims fail. Violations of BOP regulations do not equate to a violation of due process. See Irvin v. Federal Bureau of Prisons, supra, (citing Flanagan v. Shively, 783 F.Supp. 922, 931 (M.D.Pa.1992) ("The Constitution does not require strict adherence to administrative regulations and guidelines.")); Carr v. Lamanna, 2007 WL 2428537 (D.S.C. 2007) citing Saenz-Lopez v. Bureau of Prisons, 221 F.3d 1339 (7th Cir. 2000)(BOP has discretion to depart from time frames in 28 C.F.R. for good cause); Sanders v. Edgefield, 2006 WL 4279486 (D.S.C. 2008); 28 C.F.R. § 541.5. The Constitution only requires compliance with minimal federal due process standards. Id. The Supreme Court in Wolff did not set any specific time limit for the reporting of the hearing. See Wolff v. McDonnell, 418 U.S. at 563-576 (noting that due process requirements are satisfied where a prisoner is given advance written notice of the charges, the right to participate in the hearing and call witnesses, and provided with a written statement setting out the decision and the reasons therefore). In conclusion, there is Plaintiff fails to show a violation of due process in this action; fails to show he did not receive the safeguards delineated in Wolff. Accordingly, it is recommended that Respondent's motion for summary judgment be granted and the petition dismissed.

**Petitioner's Motion for Summary Judgment**

In Petitioner's Motion for Summary Judgment, he requests that he be granted summary

---

[2] The guidelines for the Discipline Hearing Officer (DHO) hearing is set forth in 28 CFR §541.8. (See Respondent's exhibit #13, p.2).

judgment because Respondent failed to timely file a dispositive motion or other response to his petition. (Doc. #25). He asserts that on October 25, 2013, the court gave the Respondent twenty-five (25) days to file a response/dispositive motion, and that Respondent did not file the Motion to Dismiss or, in the alternative, Motion for Summary Judgment until January 15, 2014.

Petitioner in essence seeks to hold Respondent in default for not timely filing its response/dispositive motion. However, Petitioner has not followed the procedures set forth in Rule 55, Fed. R.Civ. P. Additionally, default judgments are generally not available in habeas actions. See, e.g., Aziz v. Leferve, 830 F.2d 184, 187 (11th Cir.1987) (noting that "a default judgment is not contemplated in habeas corpus cases"); Ross v. Mitchell, 2011 WL 1321601, (D.S.C., April 4, 2011); Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir.1984) (reasoning that "were district courts to enter default judgments without reaching the merits of the claim, it would be not the defaulting party but the public at large that would be made to suffer"); see also Gordon v. Duran, 895 F.2d 610, 612 (9th Cir.1990) (holding that "[t]he failure to respond to claims in a petition for habeas corpus does not entitle the petitioner to a default judgment."); Allen v. Perini, 26 Ohio Misc. 149, 424 F.2d 134, 138 (6th Cir.1970) (finding "Rule 55(a) has no application in habeas corpus cases."); Garland v. Warden, 2008 WL 4834597 (D.S.C.2008) (unpublished).[3]

Accordingly, it is recommended that Petitioner's motion for summary judgment (Doc. # 25). be denied.

## **CONCLUSION**

Based on the foregoing, it is recommended that Respondent's motion for summary judgment

---

[3] To the extent Petitioner argues that by failing to timely file its response/dispositive motion it fails to create a genuine issue of material fact pursuant to Rule 56, Fed.R.Civ.P., his argument is without merit for the same reasons default judgment is not appropriate as discussed above.

(document #26) be GRANTED and Petitioner's petition for Writ of Habeas Corpus be denied, and this petition dismissed.

It is further recommended that Petitioner's motion for summary judgment (Doc. #25) be DENIED and any other outstanding motions be deemed moot.

                                                                            Respectfully submitted,

                                                                            s/Thomas E. Rogers, III
March 17, 2014                                          Thomas E. Rogers, III
Florence, South Carolina                       United States Magistrate Judge

**The parties' attention is directed to the important notice on the next page.**